UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARMINDER SINGH, | No. 1:26-cv-00546-DJC-AC |
| Petitioner, | |
| v. | ORDER |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner filed a Petition for Writ of Habeas Corpus (Pet. (ECF No. 1)) and a Motion for Temporary Restraining Order (Mot. (ECF No. 2)) seeking release from the custody of Immigration and Customs Enforcement ("ICE"). Petitioner originally entered the United States in April 2023 and was detained by immigration officials. (Pet. ¶ 1; Opp'n (ECF No. 8) at 2.) Petitioner was released a few days later on his own recognizance under 8 U.S.C. § 1226. (*See* ECF No. 1-3 at 2.) On December 29, 2025, Petitioner was taken back into ICE custody after he was released from the Kern County Sheriff's Office. Petitioner's present re-detention was enacted without notice or an opportunity to be heard.

For the reasons stated below, the Court finds that there are serious questions going to the merits and the balance of equities tips sharply in Petitioner's favor. As such, the Court will grant Petitioner's Motion for Temporary Restraining Order and

order Respondents to provide Petitioner with a Constitutionally adequate bond hearing.

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). The Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of likelihood of success. *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

## DISCUSSION

### I. Serious Questions

Petitioner has established serious questions going to the merits of his procedural due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). While noncitizens located outside the country are not granted the full protections of the Constitution, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

These due process rights extend to immigration proceedings, including final deportation orders. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Petitioner has a liberty interest in his continued freedom. As has been detailed by this and numerous other Courts, individuals released from ICE custody have a protected interest in remaining out of custody. *See Lopez v. Lyons*, No. 2:25-cv-03174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972)). It is undisputed that Petitioner was released on his own recognizance pursuant to 8 U.S.C. § 1226. Based on all the evidence presently before the Court, Petitioner has remained out of ICE custody ever since. Thus, Petitioner has an establish liberty interest in his continued freedom. The Court must thus determine what process is due.

To determine what process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. The risk of erroneous deprivation is also considerable. Petitioner was previously released of his own recognizance, meaning immigration officials have necessarily already determined that Petitioner does not pose a risk of

1   flight or danger to the community based on an individualized assessment of her
2   circumstances.  *See Pinchi v. Noem*, 792 F. Supp. 3d at 1034 (explaining that a
3   petitioner's "release from ICE custody after her initial apprehension reflected a
4   determination by the government that she was neither a flight risk nor a danger to the
5   community").
6       Respondents contend that Petitioner's present custody is pursuant to the Laken
7   Riley Act which mandates the detention of inadmissible noncitizens if they are
8   "charged with, is arrested for, is convicted of, admits having committed, or admits
9   committing acts which constitute the essential elements of any burglary, theft, larceny,
10  shoplifting, or assault of a law enforcement officer offense, or any crime that results in
11  death or serious bodily injury to another person[.]"  8 U.S.C. § 1226(c)(1)(E)(ii).
12  Respondents note that Petitioner was arrested for battery with serious bodily injury
13  and is thus subject to detention under the Laken Riley Act.  However, as Petitioner
14  notes in their response, while Petitioner was arrested on December 27, 2025, the Kern
15  County District Attorney's Office ultimately declined to file charges against Petitioner
16  and closed the case. (*See* ECF No. 10-1 at 15.)  But if Respondents are correct that
17  Petitioner is subject to mandatory detention, his liberty interest is significantly
18  reduced.
19      On its face, the Laken Riley Act appears to apply to Petitioner, given that he was
20  arrested for one of the enumerated crimes in section 1226(c)(1)(E)(iii).  As Petitioner
21  notes, however, requiring mandatory detention because of a mere arrest for which
22  prosecutors concluded they did not have sufficient evidence to charge Petitioner with
23  a crime, raises serious due process concerns. (Reply at 2.)  To avoid those concerns,
24  courts have construed the Laken Riley Act to apply only where an individual is
25  *currently* charged with or arrested for the enumerated crimes, and concluding
26  mandatory detention is not required when charges are never filed, *Helbrum v.*
27  *Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept.
28  30, 2025), or where an individual has been acquitted, *E.C. v. Noem*, No. 2:25-cv-

01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025). For these reasons, the Court concludes that Petitioner has raised serious questions going to the merits as to the application of the Laken Riley Act to his case.

To sum, the Court finds that Petitioner has a liberty interest and, via the *Mathews* factors, that he is entitled to process, and that process should have been afforded to him immediately upon detention. The Court thus concludes that Petitioner has established serious questions going to the merits of his due process claim.

**II. Irreparable Harm.**

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The Petitioner has thus established irreparable harm.

**III. Balance of the Harms/Public Interest**

The final two *Winter* factors merge when the government is the nonmoving party. *Baird*, 81 F.4th at 1040. Public interest concerns are always implicated as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). The balance of equities tips sharply in Petitioner's favor. "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, the analysis of the Pinchi court is persuasive here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth

5

> Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. ICE*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").  As other courts in this district have concluded under similar circumstances, the potential harm to Ms. Garro Pinchi is significant—she faces immediate and potentially prolonged ICE detention, putting her family's financial survival and her already precarious health at risk—while the potential harm to the government is minimal. The only potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561; *Diaz*, 2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with ... a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

*Pinchi*, 2025 WL 2084921, at *7.  For these same reasons, the Court concludes that the equities and public interest tip sharply in favor of Petitioner.  Given Petitioner's showing of irreparable harm and that there are serious questions going to the merits, this satisfies the *Winter* factors.

   The Court notes at this point that Respondents may well have a legitimate interest in Petitioner's detention based on the information contained in the arrest report.  That Petitioner was not charged does not mean that the events did not occur, and the Immigration Judge may consider them in determining whether and under

6

what conditions to set bond. It is for this reason that while release is often appropriate when the Government has failed to provide a pre-depravation hearing, balancing the equities and the public interests in this case leads the Court to conclude that it is sufficient to provide Petitioner a post-depravation bond hearing within five days. *See J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *15–16 (E.D. Cal. Oct. 16, 2025).

## IV. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED;
2. Within five (5) days of this Order, Respondents shall afford Petitioner Parminder Singh a constitutionally adequate bond hearing before an Immigration Judge. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or risk of flight, and Petitioner shall be allowed to have counsel present.

3. Respondents are ORDERED TO SHOW CAUSE why the Court should not grant a Preliminary Injunction on the same basis as this order, or whether injunctive relief is moot in light of the bond hearing ordered above. Respondents shall file a response on or before February 9, 2026. Petitioner my file a reply on or before February 12, 2026. The matter is not set for a hearing though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Dated: **February 2, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE